GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
By:    SAMUEL L. RAYMOND
       Assistant United States Attorney
       One Saint Andrew's Plaza
       New York, New York 10007
       Tel. (212) 637-6519

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                  :
UNITED STATES OF AMERICA,                         :
                                                  :
                    Plaintiff,                    :
                                                  :          VERIFIED CIVIL COMPLAINT
            -v.-                                   :           FOR FORFEITURE
                                                  :
THE PAINTING FORMERLY ENTITLED *A*                :
*FAMILY PORTRAIT* AND CURRENTLY                   :          19 Civ. 2517
ENTITLED *AN AMOROUS COUPLE* OR                   :
ALTERNATIVELY *A LOVING GLANCE* BY THE            :
ARTIST PIERRE LOUIS GOUDREAUX,                    :

                    Defendant in Rem.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


        Plaintiff United States of America, by its attorney Geoffrey S. Berman, United States

Attorney for the Southern District of New York, for its verified civil complaint, alleges, upon

information and belief, as follows:

## I.    NATURE OF THE ACTION

        1.      This action is brought by the United States of America seeking the forfeiture

of all right, title and interest in the painting formerly entitled *A Family Portrait* and currently

entitled *An Amorous Couple* or alternatively *A Loving Glance* by the artist Pierre Louis Goudreaux

(the "Defendant Property").   The painting is currently in possession of an auction house located in

Manhattan, New York (the "New York Auction House").   A photograph of the Defendant

Property as posted for auction in 2013 is attached hereto as Exhibit A.

2.      This *in rem* forfeiture action arises out of an investigation by the FBI into

the rightful ownership of the Defendant Property which was stolen during the Second World War.

The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because there

is probable cause to believe that the Defendant Property is property, real or personal, which

constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 2314 (Interstate

Transportation of Stolen Property) and 18 U.S.C. §2315 (Possession of Stolen Goods).   The

Defendant Property is also subject to forfeiture pursuant to 19 U.S.C. § 1595a(c) because there is

probable cause to believe that the Defendant Property is stolen property introduced into the United

States contrary to law.

## II.   JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.   These

statutes confer original jurisdiction to district courts for all civil actions, suits or proceedings

commenced by the United States and any action for the forfeiture of property incurred under any

act of Congress.

4.      Venue is proper under 28 U.S.C. § 1355(b)(1)(A), because acts or omissions

giving rise to the forfeiture occurred in the Southern District of New York.   Venue is further

proper pursuant to 28 U.S.C. §§ 1355(b)(1)(B) and 1395(b) because the Defendant Property was

found in the Southern District of New York.

### III.   PROBABLE CAUSE FOR FORFEITURE

5.      As set forth below, there is probable cause to believe that the Defendant Property, the estimated worth of which is $5,000 or more, is believed to have been looted in the final days of the Second World War by German troops or agents of the National Socialist German Workers' Party (the "Nazis") from the Bohdan and Varvara Khanenko National Museum of the Arts located in Kyiv, Ukraine (the "Khanenko Museum").[1]

6.      Prior to the Second World War, the Defendant Property belonged to Vasilii Aleksandrovich Shchavinskii ("Shchavinskii").   Shchavinskii was born in 1868 in the province of Kyiv and later became an art collector while living and working in St. Petersburg, Russia.   A catalog prepared in 1917 of Shchavinskii's collection (the "Shchavinskii Collection") lists the Defendant Property as Item No. 148 entitled *Semeinyi Portret* (*Family Portrait*) and attributes the work to the French painter Jean Honoré Fragonard.   An image of the Defendant Property included in the Shchavinskii Collection as Item No. 148 is attached hereto as Exhibit B.

7.      Upon the art collector's death in 1924, the entire Shchavinskii Collection passed in accordance with Shchavinskii's will to the Khanenko Museum.

8.       In 1925, the Defendant Property became part of the Khanenko Museum's temporary exhibition dedicated to Shchavinskii and was listed in the museum's pre-war inventory

---

[1] Prior to the Soviet period, the Khanenko Museum was known as the Kyiv Museum of the Arts under the All-Ukrainian Academy of Sciences.   During the Soviet period, the museum was known as the State Museum of Western and Eastern Art.   The museum is currently known as the Bohdan and Varvara Khanenko National Museum of the Arts.   For consistency, the museum is referred to as the "Khanenko Museum" throughout the Complaint.

as Item No. 5144, *Semeinyi Portret* (*Family Portrait*) by Jean-Honoré Fragonard, 67.4 x 8XY[2], oil on canvas.

9.      Shortly thereafter, Professor Sergei Oleksievich Hilyarov, then Deputy Director of the Khanenko Museum, commenced research into the attribution of *Family Portrait*. Because Professor Hilyarov doubted Fragonard's authorship, the Defendant Property was listed in the Khanenko Museum's 1927 catalog as "'[d']Après' Fragonard", i.e. "after Fragonard." Professor Hilyarov dispatched an image of the painting to the Hermitage Museum in St. Petersburg, Russia requesting clarification on the work's authorship.   Professor Valentin Fredrichovich Miller, curator of French Art at the Hermitage, responded with a new attribution for the painting – Pierre Louis Goudreaux (1694-1731) – a French artist who had been a student of Fragonard.

10.      To reflect this change, the Defendant Property was included in the Khanenko Museum's 1931 catalog with the new attribution of "P. Goudreaux."

11.      The Defendant Property was thereafter displayed in the Khanenko Museum's Hall of French Art and was included in both its annotated materials and guided tour as the work of P. Goudreaux.   A photograph of the Defendant Property in the Khanenko Museum prior to the Second World War is attached hereto as Exhibit C.   A photograph of the Defendant Property on display in the Khanenko Museum circa 1940 is attached hereto as Exhibit D.

12.      As part of the Axis invasion of the Soviet Union during the Second World War, German troops crossed the Dnieper River into Kyiv in August 1941.   From September 1941

---

[2] It is clear that there are two digits after 8, but the digits are not readable.

through August 1944, Nazi Germany occupied Ukraine through the Reichskommissariat Ukraine (the "RKU"). The RKU was divided into six administrative districts, of which the city of Kyiv comprised one such district.

13. To protect its inventory from invading German forces, the Khanenko Museum evacuated some of its inventory eastward to the Soviet Russian cities of Ufa, Penza and Saratov during the summer of 1941. The Defendant Property does not appear in the checklists of artworks evacuated to those cities.

14. From October 1941 through March 1942, the RKU seized artworks from the Khanenko Museum for display in the residences of the occupying RKU authorities. Seized works were notated in a "rozpisok pro pozichaniya" or "Empfangsbescheinigung" ("Loan Receipts"). However, the Defendant Property does not appear among the inventories of "loaned" works.

15. In August 1943, as Soviet troops began approaching Kyiv, the German authorities prepared artwork for export to Germany, via Kamyanets-Podilsky to Königsberg. The artwork packaged for shipment to Germany were recorded in inventory lists. However, the Defendant Property does not appear in any surviving copies of these lists.

16. In the final days of the war in Ukraine, the RKU administrative district of Kyiv became a military zone, and the Nazis and German troops looted many remaining valuables.

17. On or around July 10, 1944, the Committee for Art under the Soviet of Ministers for the Ukrainian Soviet Socialist Republic commenced a comprehensive review and recordation of losses incurred by the Khanenko Museum. The review was completed on or around August 12, 1948. The Defendant Property is included in the record of losses as Inventory

No. 5144, attributed to "GOUDREAUX – student of Fragonard" and identified as "*Vlyublionnie*" or "*An Amorous Couple*," size 67.5 x 82.5 centimeters.

18.    In 1998, a *Catalog of Works of Western European Painters Lost During the Second World War* was published in Kyiv.   This catalog was subsequently incorporated into the on-line database of the German Lost Art Foundation in Magdeburg, Germany (the "Foundation").  A profile for the lost Defendant Property is easily located on the Foundation's website, which indicates that the Defendant Property was part of the Khanenko Museum's collection as Inventory No. 5144, *An Amorous Couple* by Pierre Goudreaux, oil on canvas, 67 x 82 centimeters.   The profile further indicates that the entry for this painting has been published, therefore easily accessed online, since 2001.  *See* http://www.lostart.de/EN/Verlust/237450

19.    In or around January 2013, the official website of the New York Auction House posted the Defendant Property for auction.   The provenance accompanying the auction notice stated that the Defendant Property had been held in a private collection in London and then a private collection in Massachusetts.   Further investigation by the FBI established that in or around December 1993, the Defendant Property was purchased from an auction house in Deerfield, Massachusetts[3] by a New York art dealer (the "Art Dealer").   The Art Dealer held the Defendant Property until consigning it to the New York Auction House in or around January 2013.  The Defendant Property was posted for auction under the alternate title of *A Loving Glance*.

---

[3] In the originally filed complaint, which was returned by the CM/ECF as deficiently filed, the auction house was described as located in Deerfield, Missouri; upon further review by the FBI and the United States Attorney's Office, plaintiff United States of America has confirmed that the auction house is in fact located in Deerfield, Massachusetts.

20.     On or around January 28, 2013, the Khanenko Museum requested that the New York Auction House pull the Defendant Property from the auction.

21.     The New York Auction House is still in possession of the Defendant Property.

22.     The FBI commenced an investigation into the provenance of the Defendant Property and obtained records through Interpol Kyiv supporting the authenticity of the Defendant Property as belonging to the Khanenko Museum.

## IV.  CLAIMS FOR FORFEITURE

### CLAIM ONE
**Forfeiture Under 18 U.S.C. § 981(a)(1)(C)**
**(Proceeds Traceable to a Violation of the National Stolen Property Act, 18 U.S.C. § 2314)**

23.     Paragraphs 1 through 22 of this Complaint are repeated and re-alleged as if fully set forth herein.

24.     18 U.S.C. § 981(a)(1)(C) subjects to forfeiture "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."

25.     18 U.S.C. § 1956(c)(7)(A) provides that the term "specific unlawful activity" includes "any act or activity constituting an offense listed in section 1961(1) of this title." Included among the enumerated offenses in 18 U.S.C. § 1961(1) is 18 U.S.C. § 2314.

26.     18 U.S.C. § 2314 provides that "[w]hoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value

of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud" shall be subject to criminal penalties.

27.     The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because there is probable cause to believe that the Defendant Property constitutes proceeds of an offense that is a specified unlawful activity, in that the Defendant Property has a value of $5,000 or greater and was stolen and thereafter transported and transferred in interstate or foreign commerce.

**CLAIM TWO**
**Forfeiture Under 18 U.S.C. § 981(a)(1)(C)**
**(Proceeds of Possession of Stolen Goods, 18 U.S.C. § 2315)**

28.     Paragraphs 1 through 22 of this Complaint are repeated and re-alleged as if fully set forth herein.

29.     18 U.S.C. § 981(a)(1)(C) subjects to forfeiture "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."

30.     18 U.S.C. § 1956(c)(7)(A) provides that the term "specific unlawful activity" includes "any act or activity constituting an offense listed in section 1961(1) of this title." Included among the enumerated offenses in 18 U.S.C. § 1961(1) is 18 U.S.C. § 2315.

31.     18 U.S.C. § 2315 provides that "[w]hoever receives, possesses, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more . . . which have crossed a State or United States boundary after being

stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken" shall be subject to criminal penalties.

32.     The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because there is probable cause to believe that the Defendant Property constitutes proceeds of an offense that is a specified unlawful activity, in that the Defendant Property has a value of $5,000 or greater and was stolen and thereafter transported and transferred in interstate or foreign commerce.

## CLAIM THREE
### Forfeiture Under 19 U.S.C. § 1595a(c)
### (Merchandise Imported into the United States Contrary to Law)

33.     Paragraphs 1 through 22 of this Complaint are repeated and re-alleged as if fully set forth herein.

34.     19 U.S.C. § 1595a(c) provides in pertinent part that "[m]erchandise which is introduced or attempted to be introduced into the United States contrary to law shall be treated as follows: (1) The merchandise shall be seized and forfeited if it – (A) is stolen, smuggled, or clandestinely imported or introduced…"

35.     The Defendant Property is subject to forfeiture pursuant to 19 U.S.C. § 1595a(c) because there is probable cause to believe that the Defendant Property is stolen property introduced into the United States contrary to law, in that the Defendant Property was stolen from its true owner and thereafter was introduced into the United States by a subsequent possessor of the Defendant Property.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendant Property and that all persons having an interest in the Defendant Property be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendant Property to the United States of America for disposition according to law, and that this Court grant plaintiff such further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: New York, New York
      March 26, 2019

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
Attorney for the Plaintiff
United States of America

By:    /s Samuel L. Raymond
       SAMUEL L. RAYMOND
       Assistant United States Attorney
       One St. Andrew's Plaza
       New York, New York 10007
       Telephone: (212) 637-6519